# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAMELA S. COX, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-13-821-HE ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Pamela S. Cox brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. United States District Judge Joe Heaton has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 11, hereinafter "R._"). The parties have briefed their positions, and the case is now ready for decision. For the reasons discussed below, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her applications for DIB and SSI on April 14, 2010, alleging a disability onset date of November 1, 2008, and seeking benefits on the basis of

arthritis, chronic obstructive pulmonary disease ("COPD"), and high blood pressure. R. 104-14, 144, 148. Following denial of her applications initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 9, 2012. R. 21-40, 66. Plaintiff testified and was represented by an attorney at the hearing. R. 23-39. The ALJ issued an unfavorable decision on April 27, 2012. R. 11-17.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged disability onset date through the date of the decision. R. 13; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had the following severe impairments: hypertension, stable angina, COPD, nicotine addiction, and osteoarthritis. R. 13; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 13-14; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 14-16; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform "the very wide range of light work" as defined by the relevant regulations:

2

> Specifically, [Plaintiff] can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally. She can stand and walk, with normal breaks, 6 hours total in an 8-hour workday. She can sit, with normal breaks, for a total of 6 hours in an 8-hour workday. She can occasionally climb, balance, stoop, crouch, kneel and crawl. She can remember, understand, and carry [out] simple and some complex instructions and job tasks, make adaption to work situations, and respond appropriately to changes in routine work settings and processes. She can frequently relate[] to and interact with co-workers, supervisors, and the general public.

R. 14; *see* 20 C.F.R. § 404.1567(b) (defining "light work"); *id.* § 416.967(b) (same).

The ALJ determined at step four that Plaintiff's past relevant work was considered light, unskilled work and was categorized as "housekeeper." R. 16. The ALJ recited that he reached this conclusion based upon Plaintiff's description of her past relevant work and on how such work is generally performed in the economy. R. 16 (citing *Dictionary of Occupational Titles* ("DOT")); *see* DOT (4th rev. ed. 1991) 323.687-014, 1991 WL 672783 (Cleaner, Housekeeping). The ALJ concluded that the work of housekeeper does not require Plaintiff to perform work-related activities that are precluded by Plaintiff's RFC. R. 16; *see* 20 C.F.R. §§ 404.1565, 416.965. On that basis, the ALJ held that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from November 1, 2008, through the date of the decision. R. 16; *see* 20 C.F.R. §§ 404.1520(f), 416.920(f).

The Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable determination of April 27, 2012, the final decision of the Commissioner. R. 1-5; *see* 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining

3

whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff raises several claims of error on appeal. Plaintiff first alleges that the ALJ erred in determining Plaintiff's RFC. Relatedly, Plaintiff alleges that the ALJ failed to perform the proper analysis in determining that Plaintiff's RFC allowed Plaintiff to perform her past relevant work. Finally, Plaintiff argues that the ALJ failed to properly assess Plaintiff's credibility and complaints of pain. *See* Pl.'s Br. (Doc. No. 13) at 3-15.

## A. Whether the ALJ Erred at Step Four

The ALJ denied Plaintiff's claims at step four on the basis that Plaintiff retained the ability to return to her past job as housekeeper. R. 16. Step four of the sequential analysis comprises three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted); *see* SSR 82-62, 1982 WL 31386, at *4 (Aug. 20, 1980); 20 C.F.R. §§ 404.1520(f), 416.920(f).

### 1. *Phase One: Plaintiff's RFC*

Plaintiff contends that the ALJ's RFC assessment was not "accurate" because despite the ALJ having found that Plaintiff's COPD and left-shoulder osteoarthritis were severe impairments, the ALJ failed to impose limitations specifically based on those impairments in Plaintiff's RFC. Pl.'s Br. at 9-12.

Having found that Plaintiff was subject to "severe impairment(s)" that would "significantly limit[]" Plaintiff's ability to work, the ALJ was obligated to adequately address functional restrictions associated with those impairments *See* R. 13; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), (e), (g); *id.* §§ 416.920(a)(4)(ii), (c), (e), (g). An RFC assessment is a determination "of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). An ALJ may consider "only limitations and

5

restrictions attributable to medically determinable impairments" in determining a claimant's RFC. *Id.* at *2.

Here, as noted, although the ALJ found at step two that Plaintiff had a severe impairment of COPD, the ALJ did not include any specific environmental limitations deriving from Plaintiff's COPD in the RFC assessment. *See* R. 14-16. Contrary to Plaintiff's suggestion, however, the reason for that determination was adequately supported and explained by the ALJ. In formulating the RFC, the ALJ referenced Plaintiff's testimony that she was unable to work due to afflictions including "respiratory/pulmonary difficulties." R. 15; *see* R. 32-33, 38-39. The ALJ concluded, however, that Plaintiff's COPD, among other conditions, is controlled by Plaintiff's medication and therapies. R. 15. The ALJ further noted: "Although the claimant's continued smoking has produced some progression of her COPD (October 2009 prebronchodilat[o]r [forced expiratory volume in one second] 1.75 compared to June 2010 prebronchodilator [forced expiratory volume in one second] of 1.56), there is no showing that she experienced marked deterioration of her respiratory/pulmonary functions to extent that oxygen therapy is required." R. 16; *see* R. 182, 243. In reaching his RFC, the ALJ referenced the lack of any showing that Plaintiff had experienced "frequent or prolonged acute episodes of . . . respiratory distress" "requiring hospital admissions, emergency room treatments, or other crisis treatments." R. 15-16.

Plaintiff did testify at the hearing that "dust, fumes, the heat," and temperature extremes affected her breathing and that she could not have aerosol cleaners in her house. R. 33. Plaintiff also stated, however, that she could use Clorox in a limited amount. R.

6

33. Plaintiff notes that the state agency medical consultant failed to mark a box regarding environmental limitations such as fumes, odors, and dusts on her physical RFC assessment, but had marked boxes reflecting "unlimited" limitations as to all other categories of environmental limitations. Pl.'s Br. at 10 n.7; R. 191. Plaintiff submits that the consulting physician "must have meant to impose some limitation on this category." Pl.'s Br. at 10 n.7. While Plaintiff's theory is plausible, given that the consulting physician also failed to check the "None established" box with respect to environmental limitations generally, *see* R. 191, Plaintiff points to no other evidence in the record recommending imposition of environmental limitations based upon Plaintiff's condition. Plaintiff was represented by counsel during the administrative proceedings and hearing but did not request that the ALJ seek supplementation or clarification of the medical consultant's physical RFC assessment. Further, the medical consultant herself noted that while Plaintiff has a history of COPD, Plaintiff "continues to smoke 2 packs a day." R. 191.

The October 2009 pulmonary functioning test cited by the ALJ found only "moderate obstructive defect" and noted that Plaintiff's results indicated "suboptimal patient effort." R. 244. The June 2010 pulmonary functioning test reflected that Plaintiff's forced expiratory volume and forced vital capacity both increased following her use of a bronchodilator. R. 182. The record reflects that Plaintiff had been prescribed and used a bronchodilator during the relevant time period. *See, e.g.*, R. 32-33 (Plaintiff testified that she had and used two inhalers), 210 (Plaintiff had prescription for Proventil inhaler in November 2010), 231 (Plaintiff was using albuterol as needed in

April 2009). In November 2010, Plaintiff's physician noted that Plaintiff had "good control" of her COPD and should continue with her dilator as needed. R. 211.

Accordingly, the ALJ's RFC determination adequately considered the functional restrictions and limitations associated with Plaintiff's COPD and is supported by substantial evidence with respect to this impairment. *See* R. 14-16; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), (e), (g); *id.* §§ 416.920(a)(4)(ii), (c), (e), (g); SSR 96-8p, 1996 WL 374184, at *3; *Doyal*, 331 F.3d at 760; *cf. Moua v. Colvin*, 541 F. App'x 794, 800 ("[A]n impairment is not disabling when medications adequately control it without significant side effects.").

Plaintiff next argues that the ALJ's RFC determination improperly failed to include limitations caused by Plaintiff's osteoarthritis in her left shoulder. Pl.'s Br. at 9-12. As outlined above, the ALJ found that Plaintiff "can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally" and can stand, walk, and sit with normal breaks for 6 hours in an 8-hour workday. R. 14. The ALJ further found that Plaintiff "can occasionally climb, balance, stoop, crouch, kneel and crawl." R. 14. The ALJ's RFC determination, however, did not impose any manipulative limitations—i.e., limitations on reaching, handling, fingering, or feeling. *See* R. 14. *See generally* 20 C.F.R. §§ 404.1545(b), 416.945(b); R. 190.

The ALJ did not specifically address Plaintiff's left shoulder in formulating his RFC. Regarding Plaintiff's severe impairment of osteoarthritis generally, the ALJ found at step four that Plaintiff's "chronic pain and other arthritic symptoms are controlled by medication treatments and medication therapies" and noted that Plaintiff had not required

8

hospital admission or emergency room treatment for her pain. R. 15, 16. The ALJ also broadly noted that "physical examinations have not shown the claimant [to] have developed marked deformities/abnormalities of her various joints and/or to have experienced . . . marked deterioration of her physiological symptoms." R. 16.

The record shows that, in contrast to the ALJ's imprecise assessment of Plaintiff's condition, Plaintiff sought and received treatment for pain, and was diagnosed with osteoarthritis/degenerative joint disease, in her left shoulder specifically. R. 223, 231, 240. Further, the ALJ's RFC determination does not adequately indicate whether the ALJ considered Plaintiff's testimony as to her left-shoulder condition. The ALJ noted that Plaintiff testified that "she has been unable to engage in substantial gainful activity secondary to . . . chronic arthritic pain, stiffness, and numbness of her shoulders, arms, hands, hips, legs, and knees." R. 15. There is no indication that the ALJ considered Plaintiff's more detailed testimony, including her testimony that: she could not raise her left arm above shoulder level; she could not place items in cabinets with her left hand without "real[] pain[]"; and she could not "do[] housekeeping" such as vacuuming or ironing with her left arm without getting numbness and pain extending from the top of her shoulder down to the elbow. *See* R. 27, 29-31.

The ALJ's RFC assessment, which fails to discuss Plaintiff's left-shoulder condition independently of her other impairments and does not indicate that the ALJ considered Plaintiff's detailed testimony as to the functional restrictions caused by her osteoarthritis, is conclusory and insufficient. *See Winfrey*, 92 F.3d at 1019, 1023-24; *Norris v. Apfel*, No. 99-6167, 2000 WL 504882, at *2-4 (10th Cir. Apr. 28, 2000). Nor

does the ALJ's RFC assessment adequately justify a lack of manipulative restrictions on the basis of Plaintiff's left-shoulder condition. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(b); *id.* §§ 416.920(e), 416.945(b); *cf. Timmons v. Barnhart*, 118 F. App'x 349, 353 (10th Cir. 2004) ("At the very least, the ALJ should have explained how a 'severe' impairment at step two became 'insignificant' at step five.").

This error was material to the ALJ's finding at phase two of step four that Plaintiff was able to return to her past relevant work of housekeeper, as the DOT 323.687-014 description relied upon by the ALJ defines that occupation to require "[f]requent" reaching and handling. *See* R. 16; DOT 323.687-014, 1991 WL 672783. Accordingly, this matter should be remanded to allow the ALJ to reconsider Plaintiff's left-shoulder osteoarthritis, to evaluate the condition's impact on Plaintiff's ability to work, and to provide adequate explanation for the ALJ's treatment thereof. *See, e.g.*, *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

2. *Phase Two: The Demands of Plaintiff's Past Relevant Work*

Plaintiff next argues that the ALJ erred at phase two of step four because the ALJ did not make specific findings regarding the demands of Plaintiff's past relevant work of housekeeper. Pl.'s Br. at 3-9.

As noted above, in the second phase of step four the ALJ "must determine the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023; SSR 82-62, 1982 WL 31386, at *4; *see* 20 C.F.R. §§ 404.1520(f), 416.920(f). "The agency's professed 'need to know about . . . any . . . physical . . . duties' of the claimant's past jobs, along with the agency's extensive requirements concerning the claimant's

RFC, necessarily impl[ies] that the ALJ must make corresponding findings as to the demands of claimant's past jobs."  *Norris*, 2000 WL 504882, at *5 (citation omitted (quoting 20 C.F.R. §§ 404.1565(b), 416.965(b))).  The ALJ's entire analysis in this regard was as follows:

> **The claimant is capable of performing past relevant work as a housekeeper.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.**
>
> Within the last 15 years, the claimant has engaged in substantial gainful activity as housekeeper at an apartment complex.  Based on the claimant's description of her past relevant work and how said work is generally performed in the economy (See DOT Codes 323.687-014), the undersigned finds that her past relevant work falls within the definitions of unskilled, light work.  The undersigned is convinced that the demands and requirements of the claimant's past relevant work have not exceeded her residual functional capacity.

R. 16 (citations omitted).

The ALJ's determination as to the demands of Plaintiff's past relevant work is conclusory to an improper degree and does not contain the "specific findings" required by *Winfrey* and by SSR 82-62.  *See Winfrey*, 92 F.3d at 1024; *Norris*, 2000 WL 504882, at 4-5.  Plaintiff's hearing testimony as to her previous housekeeping job was minimal and did not in any way shed light upon "the physical and mental demands" of that job.  *See* R. 26-27; *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) (reversing for failure to comply with SSR 82-62 where "[t]he transcript of the hearing before the ALJ reveal[ed] there was no inquiry regarding the nature of, and physical and mental demands associated with," the claimant's previous occupation).  Plaintiff did fill out a form describing her housekeeping job in a Disability Report

submitted to the SSA, *see* R. 150, but the ALJ's decision contains no specific findings either accepting or rejecting Plaintiff's description of the demands of the job or otherwise matching any findings to the evidence. *See Norris*, 2000 WL 504882, at *5. Nor does the ALJ's bare reference to the DOT's "housekeeper" definition suffice as a finding of fact as to the demands of Plaintiff's past job as such job is performed in the national economy. *See* SSR 82-62, 1982 WL 31386, at *4.

For the ALJ's conclusion at step four to be valid, the ALJ was required to have made "specific findings" of fact regarding each of the three phases contained therein. *See id.* at *1; *Sissom v. Colvin*, 512 F. App'x 762, 769 (10th Cir. 2013); SSR 82-62, 1982 WL 31386, at *4. "Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review." *Winfrey*, 92 F.3d at 1025. Here, the ALJ failed to "conduct an appropriate analysis at phase two and, therefore, his findings at phase three of the analysis were naturally compromised." *See Sissom*, 512 F. App'x at 769; *accord Winfrey*, 92 F.3d at 1026. The undersigned additionally cannot conclude that this failure was harmless in view of the fact that the ALJ did not make an alternative finding at step five that Plaintiff could adjust to other work. *Cf. Best-Willie v. Colvin*, 514 F. App'x 728, 738 (10th Cir. 2013) (holding that step-four legal error was harmless in view of ALJ also finding at step five that the claimant could perform other jobs that existed in significant numbers in the national economy); 20 C.F.R. §§ 404.1520(g), 416.920(g). Accordingly, remand is required for further findings and analysis. *See Sissom*, 512 F. App'x at 769.

Of note, Plaintiff additionally argues that the ALJ erred in categorizing Plaintiff's previous occupation as "housekeeper," as that term is defined by DOT 323.687-014. Pl.'s Br. at 7-8, 9; R. 16.

> The ALJ may rely on the Dictionary's job description for claimant's job category as presumptively applicable to a claimant's prior work. However, a claimant may overcome the presumption that the Dictionary's entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category.

*Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051-52 (10th Cir. 1993) (citation and internal quotation marks omitted). Plaintiff argues that "housekeeper" is not the applicable DOT job category because Plaintiff indicated in her Disability Report that she did laundry tasks at her previous job in addition to cleaning. *See* Pl.'s Br. at 7 (citing R. 150). In her Disability Report, however, Plaintiff stated: "I had to carry laundry up to the second floor, then fold it and bring it back down." R. 150. Plaintiff did not state that she actually ran the washing and drying machines or ironed linens or other items. *Cf.* DOT 302.685-010, 1991 WL 672657 (Laundry Worker, Domestic). The DOT category of "housekeeper" cited by the ALJ expressly contemplates that a housekeeper "[s]orts, counts, folds, marks, or carries linens," just as Plaintiff stated she had done in her previous job in the Disability Report. *See* DOT 323.687-014; R. 150. Plaintiff has not shown that the ALJ erred in applying DOT 323.687-014 to Plaintiff's prior work.

**B. Whether the ALJ Erred in Assessing Plaintiff's Credibility**

The assessment of a claimant's RFC generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about the symptom(s) and its

functional effects." SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996). Plaintiff contends that the ALJ erred by failing to closely and affirmatively link his credibility findings regarding Plaintiff's allegations of "the intensity, persistence, and functionally limiting effects of the symptoms" associated with her medically determinable impairments to substantial evidence in the record and to "mesh" the medical evidence with Plaintiff's testimony. Pl.'s Br. at 9-14; SSR 96-7p, 1996 WL 374186, at *1. This argument implicates the framework for the proper analysis of a claimant's evidence of pain and other subjective symptoms first set forth in *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987), and more recently summarized in *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). *See also* R. 14-15.

The ALJ duly recited the relevant standards outlined in SSR 96-7p for properly conducting a credibility assessment and concluded that Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 14-15, 16; *see* SSR 96-7p, 1996 WL 374186, at *3. Between outlining the applicable standards and reaching this credibility conclusion, however, there lies a distinct analytical gap. "There are no specific reasons given for discounting [Plaintiff's] testimony anywhere in the ALJ's decision." *See Timmons*, 118 F. App'x at 353. In assessing a claimant's credibility, "the use of standard boilerplate language will not suffice." *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (alteration and internal quotation marks omitted). "Such boilerplate language

fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible." *Id.*

Here, the ALJ listed the relevant factors but failed to link them to any evidence in the record, an approach the Tenth Circuit has routinely rejected. *See* R. 14-16; *Hardman*, 362 F.3d at 679. The ALJ did note that Plaintiff participates in various activities of daily living ("ADLs")—e.g., taking care of pets, shopping, paying bills—but this finding alone is insufficient to justify an adverse credibility determination. *Cf. Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 822 (10th Cir. 2011) (noting that an ALJ may consider ADLs in evaluating credibility but "minimal ADLs alone do not constitute substantial evidence that a claimant does not suffer disabling pain" (internal quotation marks omitted)). Although the Commissioner argues that Plaintiff's failure to stop smoking adversely affected her credibility, *see* Def.'s Br. (Doc. No. 15) at 12 (citing *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006)), the ALJ does not indicate that he relied upon this fact in reaching his credibility decision. The Court's "limited scope of review precludes us from reweighing the evidence or substituting our judgment for that of the agency." *Wall*, 561 F.3d at 1070 (alterations and internal quotation marks omitted).

For the reasons outlined above, the ALJ failed to fulfill his duty to closely and affirmatively link his credibility determination to substantial record evidence. Remand is warranted on this basis. *See* SSR-7p, 1996 WL 374186, at *2; *Wilson*, 602 F.3d at 1144.

## CONCLUSION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned

Magistrate Judge recommends that the decision of the Commissioner be reversed and remanded for further proceedings regarding step four (and, if necessary, step five) and for proper assessment of Plaintiff's credibility, including any further hearing and any vocational expert testimony that the ALJ deems necessary.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by November 14, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 30th day of October, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE